IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                          CRIMINAL ACTION NO. 2:18-cr-00148

BRUCE LANDON WILLIAMS

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Bruce Landon Williams's Motion for Compassionate Release. [ECF No. 72]. In deciding such motions, I consider the following: whether the defendant has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, a defendant must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

I.     Background

On June 17, 2019, I sentenced Mr. Williams to 37 months of imprisonment to be followed by 3 years of supervised release after he pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [ECF No. 59].

Mr. Williams is currently imprisoned at Federal Medical Center Lexington in

Lexington, Kentucky. He alleges that he suffers from two health conditions: obesity and sleep apnea. [ECF No. 74, at 2]. FMC Lexington is an administrative security federal medical center that houses 1,114 total inmates. *FMC Lexington*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lex/ (last visited Dec. 23, 2020). As of December 23, 2020, there are 212 active cases among prisoners and 5 active cases among staff at FMC Lexington. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Dec. 23, 2020).

Mr. Williams previously filed a letter-form Motion for Compassionate Release. [ECF No. 69]. I denied that Motion for failure to exhaust administrative remedies on July 2, 2020. [ECF No. 70].

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Williams's sentence under compassionate release, I must find that he has exhausted his administrative remedies, that he has demonstrated "extraordinary and compelling reasons," that he is not a danger to the safety of others,

2

and that his release is consistent with the § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). As I will explain, to find that "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Williams must demonstrate that he has a medical condition listed by the CDC as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

Moreover, when a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). "In doing so, the court may modify an existing term of supervised release to add a period of home detention, only if it finds that home detention is a 'substitute for imprisonment.'" *United States v. Alvarado*, No. 18-CR-283 (NEB/TNL), 2020 WL 3041504, at *2 (D. Minn. May 27, 2020) (citing U.S.S.G. § 5F1.2; 18 U.S.C. § 3583(e)(2) (providing that the court may "extend a term of supervised release if less than the maximum authorized term was previously imposed" and may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release")); *United States v. Spencer*, No. 20-3721, 2020 WL 5498932, at *2 (6th Cir. 2020) ("if the district court reduces a defendant's sentence under § 3582(c)(1)(A) to time served, it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home"). Furthermore, "reducing Defendant's sentence to time-served is consistent with the goals of

3

sentencing and does not second-guess or relitigate this Court's original judgment." *United States v. Rodriguez*, No. 17-CR-157 (VEC), 2020 WL 3051443, at *4 (S.D.N.Y. June 8, 2020).

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment . . . ." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. McCoy*, --- F.3d ---, 2020 WL 7050097, at *8 (4th Cir. Dec. 2, 2020).

Mr. Williams requested release to home confinement from the warden at FMC Lexington on August 4, 2020. [ECF No. 72, Ex. 5]. Mr. Williams's request was denied by the warden on October 29, 2020. [ECF No. 75, Ex. 1]. Because more than 30 days have passed since Mr. Williams sent his initial request to the warden, I find that he has exhausted his administrative remedies. As such, I now turn to whether Mr. Williams has alleged extraordinary and compelling reasons that would justify compassionate release.

### b) Extraordinary and Compelling Reasons

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But the United States Court of Appeals for the Fourth Circuit has clarified that district courts are not bound by the enumerated extraordinary and compelling reasons listed in Guidelines § 1B1.13 because the Guidelines have not been updated since the passage of the First Step Act. *United States v. McCoy*, --- F.3d ---, 2020 WL 7050097, at *8 (4th Cir. Dec. 2, 2020) ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means the district court need not conform . . . to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."). "District Courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, at *9 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19." *See e.g.*, *Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL 1627331, at *9 (finding

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

5

an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D. W. Va. June 12, 2020); *see also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 23, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

In addition, many courts rely upon CDC guidance for whether a medical condition constitutes an "extraordinary and compelling" reason for release. *See e.g., United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased risk of severe illness from COVID-19."); *United States v. Nygren*, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *12 (D. Me. July 22, 2020) ("Based on the medical records in this case and the CDC guidance . . . ."); *United States v. Bell*, No. 18-CR-60115-BB-4, 2020 WL 4217724, at *4 (S.D. Fla. July 23, 2020) ("CDC guidance indicates that individuals with the following health conditions are at a higher risk of

contracting severe illness due to COVID-19 . . . .").

And many courts reject compassionate release petitions when the defendant does not suffer from any conditions recognized by the CDC as causing an increased risk of severe illness from COVID-19. *See e.g.*, *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) ("Mr. Adeyemi's asthma does not currently fit the Centers for Disease Control and Prevention's high-risk category."); *United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 2811504, at *3 (N.D. Ala. May 29, 2020) ("Ms. Mollica is under 65 and the CDC has not listed the underlying conditions from which she suffers as creating particular risk for COVID-19."); *United States v. Arroyo*, No. 2:19-CR-54-1-TLS-JPK, 2020 WL 3118787, at *4 (N.D. Ind. June 12, 2020) ("High cholesterol is not listed on the CDC website as a risk factor related to COVID-19 . . . ."); *United States v. Cosby*, No. 18CR4474-JAH, 2020 WL 3840567, at *4 (S.D. Cal. July 7, 2020) ("CDC has not listed epileptic seizures as a condition that places individuals at a higher risk of severe illness."); *United States v. Frazer*, No. CR 19-110, 2020 WL 2404893, at *2 (E.D. Pa. May 12, 2020) ("Sleep apnea is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19.").

I join other courts in holding that I cannot find that "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. *See United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 23, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

If an inmate can demonstrate that he has a condition identified by CDC, next, the defendant must show that his prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I will note that Attorney General William Barr has twice issued memoranda directing BOP to prioritize the use of home confinement for vulnerable inmates. *See Memorandum for Director of BOP*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited Dec. 23, 2020) and https://www.justice.gov/file/1262731/download (last visited

Dec. 23, 2020). Yet, by all accounts, BOP has resisted calls to release vulnerable inmates to home confinement.

In its Response, the Government points to the fact that since March 26, 2020, BOP has placed 18,935 inmates on home confinement. [ECF No. 78, at 4]. However, this number includes "inmates who have completed service of their sentence." BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/faq.jsp (last visited Dec. 23, 2020). Because this number of 18,935 inmates includes those who have already completed their sentence, it cannot be used as a metric for determining how well BOP has responded to the Attorney General's directive. Thus, when looking at whether an inmate is at a prison with a high risk of contracting COVID-19, it is also imperative to recognize the context and failures of BOP to stop the spread of COVID-19 in prisons.

Mr. Williams alleges that he suffers from two health conditions that put him at a higher risk for serious illness should he contract COVID-19: sleep apnea and obesity. [ECF No. 74, at 2]. I will address each in turn.

First, sleep apnea is not a condition on CDC's list of conditions that put one at an increased risk of serious illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 23, 2020). Other courts have also found that sleep apnea does not constitute an extraordinary and compelling reason for compassionate release during the COVID-19 pandemic. *See, e.g., United States v. Frazer*, No. CR 19-110, 2020 WL 2404893, at *2 (E.D. Pa. May 12, 2020) ("Sleep apnea

9

is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19."). Mr. Williams points to recent studies, arguing that sleep apnea does put him at an increased risk for serious illness should he contract COVID-19. [ECF No. 72, Exs. 2, 3, 4]. However, as stated above, I defer to CDC's list of conditions that put a person at an increased risk for severe illness from COVID-19 and sleep apnea is not on it. Mr. Williams's obesity is another matter.

Mr. Williams's second health condition that he alleges is obesity. Both obesity and severe obesity are on CDC's list of conditions that put someone at an increased risk for severe illness from COVID-19. *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 23, 2020). Obesity is defined as a Body Mass Index of more than 30 but less than 40. *Id.* Severe obesity is defined as a Body Mass Index of 40 or more. *Id.* "Obesity is a complex health issue resulting from a combination of causes and individual factors such as behavior and genetics." *Adult Obesity Causes and Consequences*, CDC, https://www.cdc.gov/obesity/adult/causes.html (last visited Dec. 23, 2020).

By the Government's calculations, Mr. Williams has a BMI of 40.25. [ECF No. 78, at 17]. The most recent calculation in Mr. Williams's medical records on December 19, 2019, indicate a BMI of 40.5. [ECF No. 73, Ex. 1, at 4]. Because of this, I find that Mr. Williams is severely obese which is a condition that puts him at a higher risk for severe illness should he contract COVID-19.

In its response, the Government argues that Mr. Williams's obesity cannot

10

contribute to a finding of extraordinary and compelling reasons because his obesity is his own fault and that the condition is not permanent because Mr. Williams could simply lose weight and no longer be obese. The government even goes so far as to attach receipts of Mr. Williams's commissary purchases and critique his eating habits. This ill-informed argument is unworthy of consideration by the court. Suffice it to say that fat-shaming does not serve to rebut the CDC's conclusion that severe obesity puts him at grave risk from COVID-19.

Having found that Mr. Williams does suffer from a health condition that puts him an increased risk for severe illness should he contract COVID-19, I now turn to whether the conditions at FMC Lexington are such that BOP cannot effectively prevent the spread of COVID-19 in that facility. The record clearly reflects that this is the case.

On November 12, 2020, there were 37 active cases among prisoners at FMC Lexington. [ECF No. 74, at 4]. On December 11, 2020, there were 145 active cases among prisoners at FMC Lexington. [ECF No. 74, at 3]. By December 17, 2020, that number had increased to 154. [ECF No. 78, at 16]. And as of December 23, 2020, there are 212 active cases among prisoners at FMC Lexington. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Dec. 23, 2020). These numbers do not include the number of active cases among staff at FMC Lexington. Of the 249 BOP facilities in the country that report the number of active

11

COVID-19 cases, only two have more active cases than FMC Lexington.[2] This puts FMC Lexington in the 98th of BOP facilities for active COVID-19 cases.

The Government contends that FMC Lexington has taken measures to prevent the spread of COVID-19. These include limiting social visits, restricting access of contractors to the facility, and screening all new inmates at FMC Lexington for symptoms of COVID-19. [ECF No. 78, at 7–8]. As of November 30, 2020, FMC Lexington was requiring all inmates to remain in their cells and to wear face masks at all times. [ECF No. 75, Ex. 2]. In addition, prisoners could not receive commissary, use phones or computers, and were not being released for programs or work. *Id.* Despite these efforts, it is clear that FMC Lexington is not able to take sufficient measures to protect Mr. Williams. I find that there are extraordinary and compelling reasons justifying his release.

c) **Danger to the Community and Section 3553(a) Factors**

For a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), a court must also find that the "defendant is not a danger to the safety of others or the community" and consider the § 3553(a) factors. *Howard*, 2020 WL 2200855, at *2. Section 3142(g) sets out factors to help with the dangerousness assessment, including the following:

> (1) "the nature and circumstances of the offense charged;" (2) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and]

---

[2] FCI Pekin has 262 active cases among prisoners. Terre Haute USP has 281 active cases among prisoners. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Dec. 23, 2020).

criminal history;" and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*Bass*, 2020 WL 2831851, at *8 (quoting § 3142(g)).

In addition to considering whether Mr. Williams constitutes a danger to his community, I also consider the § 3553(a) factors. Title 18, Section 3553(a) requires that a sentence be "sufficient, but not greater than necessary, to . . . reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." 18 U.S.C. § 3553(a).

Mr. Williams is not permitted to possess a firearm due to his conviction for possession of a controlled substance, cocaine, in Kanawha County Circuit Court in 2003, when he was 21 years old. He is currently serving a 37-month sentence for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [ECF No. 59]. This was not the first time I sentenced Mr. Williams for illegally possessing a firearm. In 2009, Mr. Williams pleaded guilty to being a felon in possession of a firearm, and I sentenced him to a term of 36 months followed by 3 years of supervised release. He completed that term of supervised release with no violations. According to the Government, Mr. Williams has not had any violations during his current term of imprisonment. Other than these convictions, Mr. Williams has two other convictions for controlled substance offenses on his record from when he was 18 and 20 years old.

The Government argues that Mr. Williams is a danger to society and that he is a recidivist. They point to his two convictions for being a felon in possession as evidence of this. The Government asserts that there is "an obvious risk to the community as a result of a firearm being in the hands of a multi-convicted felon." [ECF No. 78, at 27]. Further, the Government notes that Mr. Williams has only served approximately 18 months of his 37-month sentence and that releasing him now would "not reflect the seriousness of the offense, promote respect for the law, or provide just punishment" and that it "would substantially demean the seriousness of the offense and this pattern of behavior."

I cannot agree with the Government that Mr. Williams is a danger to society. Mr. Williams has never been convicted of a violent crime and he has a successful history when under BOP supervision, having received no violations while on supervised release the first time and no violations during his current term of imprisonment. Further, the drug crimes that he has been convicted of all occurred when Mr. Williams was 21 years old or younger. Mr. Williams is now 39 years old. I do not find that Mr. Williams is a serious danger to any other person.

However, I do agree with the Government that releasing Mr. Williams without any supervision today would not be supported by the § 3553(a) factors. But I do believe that releasing him to serve the remainder of his prison term on home confinement is supported by the § 3553(a) factors. Mr. Williams's currently projected release date is February 19, 2022. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 23, 2020). Having Mr. Williams serve more than a year on home confinement before being subject only to the standard

conditions of supervised release, would mean that his effective sentence is within his advisory Guidelines range of 30–37 months. This would continue to serve as a just punishment for him. And requiring that he be put on home confinement as opposed to only subject to the terms of supervised release will continue to promote respect for the law and reflect the seriousness of the offense.

### III. Conclusion

For the foregoing reasons, Mr. Williams's motions for compassionate release and for leave to file medical records under seal [ECF Nos. 72, 73] are **GRANTED**. Mr. Williams's sentence is **modified to TIME SERVED to be followed by a 36-month term of supervised release. The first 14 months of supervised release will be served on home incarceration.** All previously imposed conditions of supervised release apply during the remaining 22 months of the supervised release term. During the period of home incarceration, Mr. Williams is restricted to a 24-hour-a-day lock-down at his residence except for medical necessities, court appearances, and other activities specifically approved by the court. Mr. Williams is to be released following a 14-day quarantine period to be administered by BOP to mitigate the risk of Mr. Williams exposing others to COVID-19 upon his release. He has informed the court that his address for home incarceration will be 5328 Koontz Dr. Crosslanes, West Virginia 25313. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, the United States Marshal, and FMC Lexington, 3301 Leestown Rd. Lexington, Kentucky 40511.

ENTER: December 23, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

16